## No. 11,522.

CANAL & CLAIBORNE RAILROAD COMPANY vs. CRESCENT CITY RAILROAD COMPANY.

Under City Ordinance 1204 plaintiff acquired a street railroad franchise on Canal street, in the city of New Orleans, containing a certain reservation therein. Subsequently the defendant acquired a similar franchise under the reservation of said ordinance. Soon afterward the franchise of plaintiff lapsed under its contract. In the meanwhile litigation arose between the two companies with regard to plaintiff's right to claim *trackage* of the defendant, which resulted in a judgment in favor of the latter. Thereafter plaintiff acquired a new grant under another ordinance, which conferred the right to charge trackage.

*Held,* that the judgment between the parties in said former litigation operates as *res adjudicata* against the plaintiff, with respect to its assertion of its claim for *trackage* under its new grant—said grant and tho, city ordinance under which same was acquired not having the effect of changing the relations of the parties so as to defeat the effect of the previous judgment.

APPEAL from the Civil District Court for the Parish of Orleans.
Ellis, J.

*J. R. Beckwith* for Plaintiff, Appellee.

*J. M. Bonner* for Defendant, Appellant.

The opinion of the court was delivered by

WATKINS, J.   The plaintiff claims of the defendant a compensation. in money for the use of its track on Canal street in the city of New Orleans in running its cars, placing the *quantum meruit* value of said use at the rate of four cents per mile trackage, from the 8th of May, 1887, to the 8th of April, 1892, with legal interest, equal to twelve thousand four hundred and five dollars.

It is stated in the petition that the street railroad grant to Labuzan and his associates was acquired by its successor, the Canal & Claiborne *Streets* Railroad Company; and that this grant was limited as to time, and contained a provision by which, at the expiration of the grant, the city could acquire the roadway and installation upon paying a price to be fixed by a form of appraisement provided for in the grant.   "This first period of franchise terminated by limitation with the 7th of May, 1887."

It is further alleged that the second era, or period in the existence of the railroad, commenced on the 8th of May, 1887, and terminated with the 30th of December, 1887, and was the result of an alleged *interregnum* which was occasioned by the non-action of the city, during a possible period of deliberation on the part of the authorities as to whether it would take the roadway at an appraisement or resell the franchise.

That this *interregnum* was terminated by the city granting a new franchise, under a fixed period, commencing on the 30th of December, 1888.

Claim is then made that the Canal & Claiborne *Streets* Railroad Company held possession of its tracks and property, and, as custo-

dian without any grant beyond an implied license springing from the relations of the parties, used and operated same during this alleged *interregnum*, referring to the case of the Canal & Claiborne *Streets* Railroad Company vs. City of New Orleans, 39 An. 709.

Upon this hypothesis the statement is made that during the aforesaid interval of time between the 8th of May, 1887, and the 30th of December, 1887, the company's tracks were operated *free from the conditions of the expired grant and unaffected by the conditions of the new grant*, under which they have been operated since that time.

It is then alleged that the third era of the company's existence is the existing grant or franchise growing out of the contract of December 30, 1887, which is one *in præsenti* and *in futuro* only, taking the latter as the date of its commencement, it having been adjudicated at public auction to the highest bidder.

The purpose of these declarations is to separate and keep separated the three distinct periods of the existence of the franchise, with the distinct view and purpose of keeping separate and distinct plaintiff's contract rights thereunder, as well as his right to claim of the defendant trackage, under the specific terms and conditions of the latter grant; and it is in furtherance of this view that plaintiff amended its petition and entered a disclaimer of compensation for the period between the 8th of May, 1887, and the 1st of January, 1888, thus "confining the demand, as originally intended, to the period covered by the now existing grant which had been acquired by plaintiff, by purchase from the *old* Canal & Claiborne Railroad Company, as shown in the petition."

Claim is made for the trackage of 246,947 miles, at four cents per mile; and, entertaining the plaintiff's theory, the court *a qua* gave it judgment for the sum of nine thousand eight hundred and seventy-four dollars and eighty-eight cents, and therefrom the defendant has appealed.

Preliminarily, the defendant plead as a bar to this action the plea of *res adjudicata* and the prescription of two years, and those pleas having been overruled, it filed an answer.

Elaborated, the plea of *res adjudicata* is "that all the matters and things set up in the petition were definitely determined in the suit No. 11,888 of the docket of this court, entitled Canal & Claiborne Streets Railroad Company vs. Crescent City Railroad Company; and defendant pleads the judgment and record in that suit as a conclu-

sive bar in this case;" that is to say, the case having same title and bearing the number on the docket of this court, 10,343. *Vide* Canal & Claiborne Streets Railroad Company vs. The Crescent City Railroad Company, 41 An. 561.

Referring to the reasons for judgment in this case that were assigned by the judge *à quo*, we find the following, viz.:

" I am of the opinion that the plea of *res judicata* is not well taken. The plaintiff has made formal abandonment of all claim for the use of its tracks prior to the 1st of January, 1888, and no part of the claim, urged since said disclaimer or abandonment in this suit, was embraced in this suit, the judgment in which is here pleaded in bar as the thing adjudged. Besides examination shows that the demands and cause of action are not the same in that suit and this suit, and even if they were, express reservation was made of plaintiff's right to sue, as is done herein, for damages or reimbursement for defendant's use of plaintiff's tracks and trunk line," citing The Canal & Claiborne Street Railroad Company vs. The Crescent City Railroad Company, 41 An. 561; Canal & Claiborne Railroad Company vs. Crescent City Railroad Company and Electric Traction and Manufacturing Company, 44 An. 485.

In order to determine the effect of the judgment assigned as operating the bar of *res adjudicata* to this suit, it will be necessary to look into the judgments of this court and of the Civil District Court from which same was appealed, the decree of this court having simply affirmed the judgment that was appealed from.

We have therefore made the following extracts from the opinion of the judge *a qua* in suit No. 10,343, The Canal & Claiborne Street Railroad Company vs. The Crescent City Railroad Company, 41 An. 561, viz.:

" In the plaintiff's original petition, filed August 1, 1884, it is alleged that under a grant from the city of New Orleans the plaintiff constructed a street railway at its own expense, and for its own exclusive use, and that no other company was entitled to use the same without plaintiff's consent.

"That in September, 1881, the defendant began using a portion (thirty-nine hundred feet) of said road without color of lawful right, and continued thus unlawfully, and without petitioner's consent, and against its will and protest, up to date of filing petition (August 1, 1884).

"That said conduct operated injuriously to plaintiff by taking from it a portion of the business pertaining to that part of the track, and by increasing the expense of maintaining the same, and that the increased expense would amount to, or would not be more than compensated by the payment of, four cents per mile for each mile traveled by each of defendant's cars on said portion of track so used.

"That defendant threatens, unlawfully and without plaintiff's consent, to use said track, prays judgment in the sum of seven thousand one hundred and thirty-six dollars and fifty-six cents as the aggregate mileage or trackage claimed at four cents per mile, and for a perpetual injunction to restrain further use, etc.

"In January, 1888, an amended petition was filed reiterating the principal averments of the original petition, setting forth the continued use of the track and alleging a new grant by the city to plaintiff, under the terms of which plaintiff was bound not to *charge* other roads more than four cents a mile; the claim for the injunction was, therefore, abandoned and the money demand increased to an aggregate sum of fifteen thousand and forty dollars and fifty-six cents, being total trackage alleged to be due from September 1, 1881, to December 25, 1887.

"The defence is:

"1. That under the grant from the city to the plaintiff, the latter expressly reserved the right to grant to other roads the privilege of using the particular portions of track in question upon certain terms, which have not been complied with, only because of the refusal by the plaintiff of its necessary co-operation.

"2. That plaintiff has judicially admitted, in suit No. 5500 of the docket of this court, being a suit by the same plaintiff against the same defendant, that defendant had been granted the right to use the track in question, and is, therefore, estopped from denying the existence of such a right.

"3. That the trackage is not worth four cents per mile. As far as concerns that portion of plaintiff's road about which this litigation has arisen, the plaintiff's rights are conferred by Ordinance 1204, N. S., which, after granting plaintiff the right to lay its track on a certain part of Canal street, including that portion which is now in controversy, goes on and provides as follows, to-wit:

"Should the city of New Orleans at any time during the existence

of the contract of the 6th of May, 1867, between it and the Canal & Claiborne Street Railroad Company, enter into any agreement with other companies whereby said road on Canal street, from Claiborne street to Front Levee street, and from Front Levee street *or any part thereof*, may be granted the city of New Orleans, or the road or roads to which the privilege may be granted, shall reimburse the Canal & Claiborne Street Railroad Company *a fair and reasonable proportion of the value of the portion or portions of the road to be so used;* and should said proportion not be agreed upon between said Canal & Claiborne Street Railroad Company and the city of New Orleans, or the said road or roads, two disinterested persons shall be appointed, one by the city of New Orleans or the road or roads, as the case may be, and the other by the Canal & Claiborne Railroad Company; and in the event of a disagreement as to said proportion to be paid between said persons thus appointed, a third person or umpire shall be appointed by the judge of one of the District Courts of the parish of Orleans and the decision thereby had shall be final and binding.

"I have italicized certain language in the foregoing extracts as bearing particularly upon the issues in this case. It will be observed that plaintiff alleges that 'on the 1st day of September, 1881, the said defendant, without any lawful right or permission from petitioners to do so, wrongfully commenced drawing and propelling its passenger cars over said track,' etc. The fact, however, is that the permission of the plaintiff was given, and the plaintiff's superintendent aided the defendant's officers in running properly; and evidence was offered on the trial, *not* to show that plaintiff had *not* consented, but to show that plaintiff *had consented* to defendant's using the road; the claim on the one hand being that the consent was given with the understanding that the defendant would pay *trackage*, and, on the part of defendant, that whilst no consent was asked, no objection was made, and defendant began the use of the road, as it began the use of every portion of its newly constructed track, by virtue of its grant from the city.   *   *   *

"It is clear, however, that defendant began using plaintiff's road with plaintiff's permission, and the evidence shows that defendant had also the necessary authority or grant from the city of New Orleans (exercising the reserved rights as provided in the Ordinance No. 1204 already quoted), said grant having been made previously to Shelby Seymour and Chas. H. Chase, by Ordinance No. 1222

(November, 1871), and having been thereafter acquired by defendant.

"It further appears that within a short time after defendant began to use the road in question, to-wit, within six weeks, the issue between the two corporations was squarely made as to the question of terms, the plaintiff demanding *trackage* and the defendant offering to reimburse a *proportion of the cost of the road used by it,* as provided by Ordinance No. 1204, and this I understand the defendant has ever been willing to do, as also to bear its proportion of the cost of maintenance of the road used by it.   Neither the law or the contract require anything more, nor has the plaintiff the right to demand anything more.   The theory that that reservation of right contained in the ordinance depended upon a condition which was never fulfilled, has, in my judgment, but feeble support.   The language of the reservation is clear, positive and unmistakable, whilst the provisions of the ordinance and the circumstances relied on as imparting a condition, the non-fulfilment of which defeats the reservation, taken together, utterly fall short of the effect attributed to them.

"The plaintiff's demand should therefore be rejected at plaintiff's costs, without prejudice, however, to any rights which plaintiff may have in reimbursement under the terms of Ordinance 1204, N. S., or for proportionate cost of maintaining so much of its road as now used by defendant."

### JUDGMENT.

"For the reasons assigned in the written opinion of the court, this day delivered and filed—

"It is ordered, adjudged and decreed that the demand of the plaintiff, the Canal & Claiborne Street Railroad Company, be rejected at its cost, without prejudice, however, to any rights which said plaintiff company may have against the defendant, the Crescent City Railroad Company, for reimbursement under the terms of Ordinance No. 1204, N. S., or for proportionate cost of maintaining so much of its road or track as is used by said defendant company."   R. No. 10,343, pp. 261, 262.

The appreciation the judge *a quo* had of that case was, first, that the plaintiff demanded *trackage;* and, second, defendant offered reimbursement of a proportion of the *cost* of the road used by it as provided by Ordinance No. 1204; and proceeding upon this hypothesis the judge decreed that "the plaintiff's demand should therefore be

rejected at (its) cost, without prejudice, however, to any rights which plaintiff may have *in reimbursement* under the terms of Ordinance 1204, N. S., or for the proportionate cost of maintaining so much of its road as now used by defendant."

In decision of the case this court said:

"There is but one question to determine in this case. Was the defendant company authorized by legislative provisions to use the track of the plaintiff, and in granting the permission was the mode of compensation fixed?"

Finding both of these propositions to be affirmed, under the provisions of Ordinance 1204, N. S. (which is quoted at length), and the law, the opinion declares that the "plaintiff company has failed to follow the requirements of the ordinance," and affirmed the judgment of the lower court.

In this situation of affairs, what was the remedy and relief that remained to the plaintiff? Clearly that which is covered by and included in the terms of the District Judge's reservation—for the judgment formally and in terms rejected the demands of plaintiff for *trackage* and reserved its right to claim "*reimbursement under the terms* of Ordinance 1204, N. S., or for proportionate cost of maintaining so much of its road as (is) now used by the defendant."

Referring to the Ordinance 1204, N. S., we find it contains the express stipulation that the city reserved the right to enter into agreements with other companies than the plaintiff for the use of plaintiff's trunk line on Canal street or any part thereof, and further stipulated that in case other grants were made, then and in that event "the city of New Orleans, or the road or roads to which the privilege may be granted, shall reimburse the Canal & Claiborne Street Railroad Company *a fair and reasonable proportion of the value of the portion or portions of the road* to be so used," etc. Considering the quoted averments of the plaintiff's petition, the terms, conditions and reservations of the judgment pronounced, and the provisions of Ordinance 1204, N. S., it seems to be an irresistible conclusion that the same identical issues are involved in both suits, and, if so, the plea of *res adjudicata* is good, and should have been maintained in the lower court.

In each suit, like demand is made by the plaintiff for trackage of the defendant for the self-same section of its trunk line on Canal

street, between Carondelet and Wells street, near the Mississippi river.

The only differences suggested between the instant suit and the previous one are, (1) that claim is made in this suit for trackage under its contract and franchise acquired from the city on the 30th of December, 1887, which stipulates for the payment of trackage; (2) that Ordinance 1204, N. S., was repealed, and, consequently, its provisions are no longer in force.

While it is true that plaintiff entered a *remittitur* of that portion of his demand embraced within the so-called *interregnum* between the 7th of May, 1887, and the 30th of December, 1887, yet it appears that plaintiff's predecessor filed said former suit, claiming trackage, on the 1st of August, 1884, and therein alleged that the defendant commenced using the portion of its road on Canal street, the same that is now in controversy, in the month of September, 1881.

It further appears in said former suit, and it is so stated in the judge's reasons for judgment in that case, that in January, 1888, after it had acquired its *new* franchise from the city, on the 30th of December, 1887, the plaintiff filed an amended petition " *alleging a new grant* by the city to plaintiff, under the terms of which plaintiff was bound not to *charge* other roads more than four cents a mile," thus resting its claim for compensation *in that suit* upon its new franchise, the benefit of which it at first claimed in this suit, but afterward abandoned, on the theory that the three different periods of the franchise and of *interregnum* were, essentially, distinct and different.

It is evidently too late now to disclaim the compensation alleged for trackage earned during the alleged *interregnum* prior to December 30, 1887, after having, in the former suit, set up the *new* grant of that date, as justifying the allowance of four cents per mile *trackage* during the period of the first, or Labuzan grant, *subsequent to the defendant's occupation of its tracks in August, 1881.*

Certainly, plaintiff's *remittitur* in this suit can not avoid the effect of its judicial averments made in the *very* suit that defendant pleads as *res adjudicata*.

With respect to the repeal of Ordinance 1204, it appears that the rights of the Canal & Claiborne *Streets* Railroad Company under the Labuzan grant expired on the 8th of May, 1887, yet said ordinance was not repealed until some date in 1882, and, therefore, it was

in full force and effect at the time defendant acquired its franchise, in 1881. And hence, at the expiration of the Labuzan grant, and at the date plaintiff acquired its new grant, on December 30, 1887, the grant in favor of the defendant was *in proprio vigore.*

We find this theory fully confirmed in a more recent decision of this court, to which same plaintiff and defendant were parties, with others, viz.: Canal & Claiborne Streets Railroad Company vs. Crescent City Railroad Company *et al.,* 44 An. 485.

In our opinion in that case we find it stated that, in the plaintiff's petition, it is averred "that the Canal & Claiborne *Streets* Railroad Company acquired from the city of New Orleans a grant to operate a street railway for the term of twenty-four years, on and over Canal street, * * * *the time of which grant commenced to run from the 8th of May, 1887.*"

And it is therein further stated that in July, 1888, the present plaintiff acquired all the rights of the Canal & Claiborne *Streets* Railroad Company, thereby judicially admitting that it had not acceded to the aforesaid rights of its predecessor until very nearly seven years after the time defendant had acquired its franchise.

Under this view plaintiff acquired its new grant *cum onere,* and subject to all the stipulations and conditions that are contained in the defendant's franchise, as well as of Ordinance 1204, same being operative at the time the city granted the said franchise, and constituting a part of it, notwithstanding the subsequent repeal of the ordinance.

That repeal could not operate retrospectively and be given the effect of divesting the defendant's acquired rights under the express provisions of its grant and of the ordinance. The rights of the defendant were acquired with direct reference to the provisions of Ordinance 1204, and to the grant plaintiff had acquired from Labuzan and associates. It was also with direct reference to the time of the expiration of that grant that the plaintiff acquired its new one. The effect of the repeal of the ordinance must be *in futuro.*

It is therefore plain that notwithstanding the plaintiff may make claim for *trackage* against those *subsequently* acquiring franchises over its tracks in place, yet it can not successfully prefer such claim against the defendant. It is, consequently, equally plain that we are confronted, in this case, with identically the same issue

as those raised and decided adversely to the plaintiff in the former suit.

If it were possible to accept plaintiff's theory of an existing *interregnum* of franchise between May 8, 1887, and December 30, 1887, the breaking of the continuity of its grant alone would not help the matter, because even this theory would leave defendant's franchise unaffected, and Ordinance 1204 in full force *quoad* defendant's grant; under both of which defendant's possession began, and, necessarily, continues in force to the present time. The acquisition of the new grant by the plaintiff was subordinated thereto.

Our attention is attracted by plaintiff's counsel to the further statement of the judge *a quo* to the effect that " it may also be noted that the decree of the Supreme Court in Canal & Claiborne Railroad Company vs. Crescent City Railroad Company and Electric Traction and Manufacturing Company, 44 An. 485, 492, made express reservation of plaintiff's right to sue, as herein."

It is observed, also, that that suit was one not only against the defendant, but against another party; and the relief prayed for was not *compensation* for the occupancy and use of the plaintiff's tracks, but to enjoin and prohibit the *two defendants from entering upon its tracks* at all. Therefore, the reservation of the judgment can not be given any broader effect than the averments of the petition justify; and, in any event, they must be considered and determined in connection with the previous judgment and decree.

Upon a careful consideration of this case in all its bearings, and of the suit and judgment relied upon as forming *res adjudicata*, our conclusion is that the plea should have been sustained in the lower court, and that the judgment appealed from should be reversed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and that the plea of *res adjudicata* be sustained, and the suit dismissed at plaintiff's cost in both courts.

Rehearing refused.